IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MEGAN HOOKEY,** : | |
| : | |
| Plaintiff : | CIVIL NO. 1:CV-08-02284 |
| : | |
| v. : | (Judge Rambo) |
| : | |
| **MORROSA LOMAS,** *et al.*, : | |
| : | |
| **Defendants** : | |

# **M E M O R A N D U M**

Plaintiff Megan Hookey ("Hookey") initiated this civil rights action on December 22, 2008 with a complaint filed pursuant to the provisions of 42 U.S.C. § 1983, (Doc. 1), as amended April 29, 2009 (Doc. 25), while confined at the State Correctional Institution in Muncy, Pennsylvania ("SCI-Muncy"). Hookey sets forth allegations against several employees of the Pennsylvania Department of Corrections ("DOC"), a Pennsylvania State Trooper, an employee of the Lighthouse Prison Ministries, and the Honorable John DiSalle. Hookey contends that all these Defendants violated her constitutional rights in the context of state court custody proceedings involving her child. She seeks compensatory and punitive damages, as well as declaratory relief.

Before the court are several motions filed by Hookey, requesting a transfer to another state institution. (Docs. 9, 17 & 34.) For the reasons that follow, the motions will be denied.

I. **Background**

In the instant motions, Hookey contends she is entitled to a transfer to another state institution because SCI-Muncy officials have disregarded her safety concerns and refused to cooperate with her in her efforts to protect herself and her infant son. (Doc. 17.) Specifically, she claims that SCI-Muncy officials are discriminating and retaliating against her by issuing her frivolous and false misconducts; denying her access to legal materials and access to the courts; denying her recreation time; and harassing her. (Docs. 9, 17 & 34.) In considering these motions, the court will set forth the background of Hookey's paternity and custody case, as well as her efforts in requesting a transfer from DOC officials by filing grievances.

Hookey began her incarceration at SCI-Muncy on January 23, 2008. (Doc. 45-2, Ex. A, Troy Edwards Decl., ¶ 21.) At the time, she was pregnant. (Doc. 25 at 3.) Hookey claims that on February 2, 2008, she received mail from outside the institution threatening the safety of herself and her unborn child. (*Id.*) Hookey claims that she filed a grievance with respect to this mail, and was told to contact security. (*Id.*) She asserts that security did not respond to her resulting request. (*Id.*)

On March 12, 2008, Hookey gave birth to a son, Parker Hookey, while still incarcerated. (Doc. 45-2, Ex. A, ¶ 29.) The child was placed in the care of Susie Mack with Lighthouse Prison Ministry until Hookey's release from prison. (Doc. 25 at 3.) On April 8, 2008, an individual named Aaron Jones filed for custody of the child. (Doc. 25 at 3.) Hookey maintains that Jones is not the biological father of her child. (*Id.*) The Honorable John DiSalle of the Court of Common Pleas of Washington County, Pennsylvania, entered an order to have DNA testing performed on the child to confirm the paternity of Jones. (Doc. 45-3, Ex. A, ¶¶ 30-31.) However, Hookey refused this testing. (*Id.* ¶ 30.) As a result, Jones, through his attorney Joseph Zupancic, filed a petition for a rule to show cause why Jones should not be granted custody of the child. (Doc. 45-3, Ex. B, Rule to Show Cause, 2-9.) Judge DiSalle held a videoconference hearing on the petition on July 28, 2008, which was attended by Aaron Jones and his parents, Hookey, and Troy Edwards, SCI-Muncy's Acting Corrections Superintendent's Assistant and Grievance Coordinator. (Doc. 45-2, Ex. A, ¶ 31.) Following the hearing, Judge DiSalle issued an order awarding sole custody of the child to Aaron Jones and allowed law enforcement to enforce the order. (Doc. 45-3, Order of Court, 11.)

On July 28, 2008, with the court order and the assistance of Defendant Townshend, a Pennsylvania State Trooper, Jones acquired physical custody of the

child from Susie Mack. (Doc. 25 at 4.) Hookey claims that since that date she has been filing complaints "to all defendants" about the safety of her child, including submitting photographs of him in neglectful care. (*Id.*)

On August 7, 2008, a paternity test revealed that Jones was the biological parent of the child within 99.9% accuracy. (Doc. 45-4, Ex. D, Paternity Test, 2.) On August 12, 2008, SCI-Muncy's Program Review Committee ("PRC") met with Hookey to discuss her concerns about her son's welfare. (Doc. 45-4, Ex. E., PRC Letter, 4-5.) PRC member Wendy Nicholas's follow-up letter to Hookey addressed Hookey's concerns over visitation with her child prior to Jones obtaining custody and granted Hookey a telephone call to Children and Youth Services ("CYS") to discuss her concerns with her son's placement and medical status. (*Id.*) Ms. Nicholas also informed Hookey that any further concerns about her son's placement should be directed to CYS by written correspondence. (*Id.*)

The Washington County Domestic Relations office scheduled a review hearing in Hookey's custody case in December 2008. Prior to the hearing, Hookey was informed by Defendant Counselor Rippey that SCI-Muncy did not have a court order for Hookey's attendance at the hearing. (Doc. 45-2, Ex. A, ¶ 33.) However, Defendant Harvey, a member of the Parenting Department, provided the administrative assistant at the Washington County Domestic Relations office with her

contact information should the office wish to request, subpoena, or order Hookey's participation. (*Id.* ¶ 34.) SCI-Muncy did not receive such a request. (*Id.* ¶ 35.) As a result of the review hearing, which took place in January 2009, Aaron Jones continues to maintain custody of the child. (Doc. 45-5, Ex. G, 4.)

Hookey filed several grievances at SCI-Muncy regarding her custody case. On June 28, 2008, Hookey filed an inmate request to staff member, requesting permission to file a request for protection from abuse ("PFA") in response to threats to herself and her child from someone outside the institution. (Doc. 45-2, Ex. A-1, 19.) In response, Intelligence Gathering Captain Robenolt provided Hookey with contact information for a Pennsylvania State Police trooper who could accept her PFA filing. (*Id.*) On July 2, 2008, Hookey filed grievance number 234431, complaining that she had not been permitted to file a PFA. (*Id.* at 18.) This grievance was denied because it had been resolved upon initial review by providing Hookey with state police information. (*Id.*) Hookey did not appeal this decision.

On July 8, 2008, Hookey filed an inmate request to staff member, inquiring about whether SCI-Muncy staff had received a grievance she filed on June 29, 2008 which alleged she had been assaulted. (Doc. 61 at 12.) Staff member Gordner responded on July 11, 2008, informing Hookey that staff had not received such a grievance. (*Id.*) Hookey did not appeal this decision.

5

On October 14, 2008, Hookey filed an inmate request to staff, requesting the address of FBI Agent Patrick Howley in order to contact him about investigating the kidnaping of her son. (Doc. 45-2, Ex. A-1, 28.) Accordingly to Hookey, Aaron Jones had kidnaped her son and placed him in harm. (*Id*.) Captain Robenolt responded on October 24, 2008, providing Hookey with Agent Howley's address. (*Id*.) On October 21, 2008, Hookey filed another inmate request to staff member, requesting Captain Robenolt contact Agent Howley on her behalf. (*Id*. at 27.) Captain Robenolt responded on October 24, 2008, informing Hookey that her request was beyond the scope of his job function, but advised her to contact Agent Howley directly. (*Id*.) On November 19, 2008, Hookey filed grievance number 251935, asserting that Defendant Sisley refused her mail contact and a telephone call to Agent Howley for the investigation of the kidnaping of her son. (*Id*. at 25.) Captain Robenolt denied this grievance on December 5, 2008, but advised Hookey to write directly to Agent Howley regarding her request for investigation. (*Id*. at 24.) On December 8, 2008, Hookey appealed that denial to the Superintendent. (*Id*. at 22-23.) The Superintendent denied Hookey's appeal on December 10, 2008, finding that the grievance had been properly addressed and that Hookey had not provided any corroborating evidence to support her claims. (*Id*. at 21.) Hookey did not appeal this decision.

On December 9, 2008, Hookey filed grievance number 253793, alleging that she had received an unfair psychological diagnosis from Ms. Lois Brown-Velkoff, a counselor she had never met or seen. (Doc. 45-2, Ex. A-3, 35.) She further claimed that this diagnosis was then revealed to sources outside SCI-Muncy without her consent or a court order. (*Id*.) SCI-Muncy's Licensed Psychological Manager Lisa D'Addio denied the grievance on December 23, 2008, informing Hookey that SCI-Muncy medical, psychological, and psychiatric staff all have proper access to Hookey's file. (*Id*. at 34.) On December 29, 2008, Hookey appealed that denial to the Superintendent. (*Id*. at 32-33.) The Superintendent denied Hookey's appeal on January 12, 2009, affirming Manager D'Addio's decision. (*Id*. at 31.) Hookey did not appeal this decision.

On January 1, 2009, Hookey filed grievance number 256602, seeking access to her legal materials and reimbursement of her legal fees. (Doc. 45-2, Ex. A-4, 40.) Grievance Officer Gridley responded on January 14, 2009, informing Hookey that she had received her allowable property and legal mail. (*Id*. at 39.) He also denied her request for reimbursement of her legal fees and advised her to write a request slip for access to the law library, if necessary. (*Id*.) On January 18, 2009, Hookey appealed that denial to the Superintendent. (*Id*. at 38.) The Superintendent denied Hookey's appeal on January 27, 2009, citing Hookey's own previous statements regarding the

receipt of her legal materials and mail to counter her allegations. (*Id*. at 37.) Hookey did not appeal this decision.

On January 1, 2009, Hookey filed grievance number 256629, setting forth her concerns over SCI-Muncy staff's refusal of her participation in the custody review hearing. (Doc. 45-2, Ex. A-5, 47.) She also claimed that "SCI Muncy has made every attempt to keep me from reporting the deplorable conditions of my infant son." (*Id*.) The grievance was denied by Ms. Nicholas on January 16, 2009. (*Id*. at 46.) In that denial, Ms. Nicholas stated:

> After reviewing your grievance and the available documentation, as well as speaking with Mr. Deibler-Gorman, the answer to this grievance remains the same as my response to your request slip dated 1/08/09. While I understand your frustration with the current situation with your son, at the time of his placement, you were given a phone call by Ms. Hummel to Childline [CYS] with which to address your concerns. Since that time, you allege that he is residing in deplorable living conditions but you have no verification of this. During our discussions, you were basing this belief on two pictures your received where your son was standing by a table on the porch and you did not see any adult close in proximity. This is not verification of deplorable living conditions or neglect. If you have something legitimate that would support your statements, please provide it to Ms. Harvey for review so that an informed decision can be made about the need for a referral to Child and Youth Services. As staff, we do not make these allegations against caregivers without supporting evidence.

(*Id*.) On January 21, 2009, Hookey appealed that denial to the Superintendent. (*Id*. at 44-45.) The Superintendent denied the appeal on February 4, 2009, affirming Ms. Nicholas' decision. (*Id*. at 43.) Hookey did not appeal this decision.

On January 10, 2009, Hookey filed grievance number 257219, alleging that Defendant Counselor Rippey had not properly completed Hookey's annual review, was not addressing her concerns, and had filed fabricated misconducts against her. (Doc. 45-2, Ex. A-6, 52-53.) Unit Manager William Frantz responded on January 16, 2009, finding Hookey's claims frivolous. (*Id*. at 51.) On January 21, 2009, Hookey appealed that denial to the Superintendent, accusing Defendant Counselor Rippey of retaliating against her for filing grievances and requesting a new counselor. (*Id*. at 50.) The Superintendent denied the appeal on January 27, 2009, finding that Hookey had provided no evidence to support her allegations. (*Id*. at 49.) The Superintendent also reminded Hookey that as of January 25, 2009, she had been assigned a new counselor. (*Id*.) Hookey did not appeal this decision.

On January 12, 2009, Hookey filed grievance number 257505, alleging that Lieutenant Gridley was retaliating against her and threatening to place her in the infirmary for filing a grievance against Restricted Housing Unit ("RHU") officers, who had denied her sanitary pads. (Doc. 45-2, Ex. A-7, 58-59.) Lieutenant Bennett responded on January 21, 2009, informing Hookey that Lieutenant Gridley

9

recommended placement in the infirmary in order to address her health concerns. (*Id*. at 57.) He also informed her that on the day in question she had already been given the allotted amount of sanitary pads, but recommended that she sign up for sick call to address her medical concerns. (*Id*.) On January 26, 2009, Hookey appealed that denial to the Superintendent, claiming Lieutenants Bennett and Gridley were lying. (*Id*. at 56.) The Superintendent denied the appeal on February 9, 2009, finding that Hookey had provided no evidence to support her allegations. (*Id*. at 55.) Hookey did not appeal this decision.

On January 20, 2009, Hookey filed grievance number 258353, alleging that the law librarian had not sent back time-sensitive legal copies in a timely fashion, causing her court cases to be dismissed. (Doc. 45-2, Ex. A-8, 62.) Corrections School Principal Richard Shuler responded, informing Hookey that she had submitted her request for copies on January 12, 2009, and therefore the law librarian would have received the request on January 13, 2009 or later. (*Id*. at 61.) Further, the librarian did not work on January 16 through 19, 2009, but fulfilled the request upon her return on January 20, 2009, and returned the copies on January 21, 2009. (*Id*.) Therefore, he concluded, the copies were properly mailed within five working days. (*Id*.) Hookey did not appeal this decision.

On March 3, 2009, Hookey filed an inmate request to staff member, requesting a transfer. (Doc. 61 at 9.) ) SCI-Muncy staff member E.C. denied Hookey's request on March 3, 2009. (*Id*.) Hookey did not appeal this decision.

On June 14, 2009, Hookey filed grievance number 277143, alleging that she did not receive proper medical treatment for her ailments caused by the stress of her legal cases. (Doc. 45-2, Ex. A-9, 67.) Corrections Health Care Administrator Gloria Diggan responded on June 25, 2009, finding that the RHU officers reported Hookey's complaints to the medical unit and a nurse had assessed her for her complaint of high blood pressure, but found the levels to be within normal range. (*Id*. at 66.) Hookey did not appeal this decision.

Finally, Defendants assert that during a group session with an SCI-Muncy treatment specialist, Hookey reported that her son was deceased. (Doc. 45-2, Ex. A, ¶ 38.) After a brief investigation, prison officials confronted Hookey with this statement. (*Id*.) A phone call was placed to Hookey's mother to ensure the health and welfare of her son. (*Id*.)

## II. <u>Discussion</u>

The Pennsylvania DOC has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. 37 Pa. Code § 93.9(a); *see also* www.cor.state.pa.us, DOC Policies, Policy No. DC-

ADM 804, Inmate Grievance System. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. An inmate may then appeal an adverse decision of the Grievance Coordinator to the Superintendent of the institution, and can finally appeal to the Secretary of the DOC Office of Inmate Grievances and Appeals. *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process).

Generally, when an inmate wants to transfer to another institution, the procedure is initiated by the inmate requesting such a transfer through a staff member and providing the reasons for the request. (Doc. 45-2, Ex. A, ¶ 9.) In deciding whether to grant a request for a transfer, prison staff consider the reason for the request, the availability at other institutions for housing and applicable programs, the disciplinary status and history of the inmate, and the value of incentive for the inmate. (*Id*. ¶ 10.)

Further, as set forth by Defendants, in addition to making a request with prison staff such as corrections officers, counselors, therapy leaders, medical staff and security staff, every day after inmate lunchtime, a procedure called "mainline" takes place in which inmates line up in order to speak to facility officials in the institution such as the Superintendent, Deputy Superintendents, Major, Superintendent's

12

Assistant, and Intelligence Gathering/Security Captain. (*Id.* ¶ 27.) Inmates are also afforded the opportunity to address safety concerns through an anonymous telephone call, as each housing unit has a posted telephone number which inmates can use to call the Security Captain to report safety issues or fears. (*Id.* ¶ 28.)

In the instant case, Defendants assert that Hookey did not request a transfer informally through a staff member or formally through SCI-Muncy's grievance system. (*Id.* ¶ 11; Doc. 45 at 2-3; Doc. 45-2, Ex. A-1, 16-79.) Further, Hookey did not discuss her fears for her safety in the institution with any staff member at SCI-Muncy. (Doc. 45-2, Ex. A, ¶ 26.) Hookey also did not discuss her fears for her safety with any of the facility's officials. (*Id.* ¶ 27.) In addition, neither the Intelligence Gathering or the Security Captain received any anonymous telephone calls relating to Hookey's safety fears. (*Id.* ¶ 28.) As a result, at no point were SCI-Muncy officials put on notice of Hookey's desire to be transferred to another institution. However, in her reply brief to the instant motions,[1] Hookey attaches her July 8, 2008 request to staff member in which she did in fact request a transfer. (Doc. 61 at 9.) But this request was denied, and it appears that Hookey did not seek further review of her request.

---

[1] This reply brief also addresses Defendants' motion to dismiss. (Doc. 61.)

It is well-settled that a prisoner has no justifiable expectation that she will be incarcerated in a particular prison or facility. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). Pennsylvania law leaves the housing of inmates in particular institutions to the discretion of state officials. *See* 37 Pa. Code § 93.11(a); *Hannon v. Terra*, Civ. A. No. 94-2845, 1995 WL 129219, at *11 (E.D. Pa. Mar. 24, 1995). Where the state does not provide a liberty interest in being housed at a particular institution, prison officials have the discretion to transfer an inmate "for whatever reason or for no reason at all." *Meachum v. Fano*, 427 U.S. 215, 228 (1976). "If the prisoner can be lawfully held in the facility to which [s]he has been transferred, [s]he cannot object to that transfer, even if the transfer results in [her] being placed in a more restrictive or less accessible facility." *Ali v. Gibson*, 631 F.2d 1126, 1135 (3d Cir. 1980). "[T]ransfer to less amenable quarters for nonpunitive reasons [is] 'ordinarily contemplated by a prison sentence.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). Moreover, interference in the placement determinations of the Pennsylvania Department of Corrections would involve the judiciary in "the day-to-day functioning of . . . prisons . . . [and] issues and discretionary decisions that are not the business of federal judges." *Meachum*, 427 U.S. at 228-29.

Turning to the instant case, based on well-settled case law and without further consideration by SCI-Muncy officials of Hookey's desire to be transferred to another institution, this court will not interfere in the placement determination – a discretionary decision to be made by DOC officials – of Hookey. Thus, her motions for a transfer will be denied. An appropriate order follows.

                                         s/Sylvia H. Rambo
                                         United States District Judge

Dated: March 11, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**MEGAN HOOKEY,** :
:
    **Plaintiff** : **CIVIL NO. 1:CV-08-02284**
:
  v. : **(Judge Rambo)**
:
**MORROSA LOMAS,** *et al.*, :
:
    **Defendants** :

## **O R D E R**

In accordance with the attached memorandum of law, **IT IS HEREBY**

**ORDERED THAT** the motions for a transfer (Docs. 9, 17 & 34) are **DENIED**.

                                             s/Sylvia H. Rambo
                                            United States District Judge

Dated: March 11, 2010.