IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MEGAN HOOKEY,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:CV-08-02284** |
| | : | |
| v. | : | **(Judge Rambo)** |
| | : | |
| **MORROSA LOMAS,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

# **M E M O R A N D U M**

Plaintiff Megan Hookey ("Hookey") initiated this civil rights action on December 22, 2008 with a complaint filed pursuant to the provisions of 42 U.S.C. § 1983, (Doc. 1), as amended April 29, 2009 (Doc. 25), while confined at the State Correctional Institution in Muncy, Pennsylvania ("SCI-Muncy"). Hookey sets forth allegations against several employees of the Pennsylvania Department of Corrections ("DOC"),[1] Pennsylvania State Trooper David Townshend, an employee of the Lighthouse Prison Ministry, and the Honorable John DiSalle of the Court of Common Pleas of Washington County, Pennsylvania. Hookey contends that all these Defendants violated her constitutional rights in the context of state court custody proceedings involving her child. She seeks compensatory and punitive damages, as

---

[1] In the amended complaint, Hookey names the following DOC Defendants: David Deibler Gorman, Troy Edwards, Bill Frantz, Latisha Harvey, Rhonda Hummel, Marirosa Lamas, Brenda Rippey, and George Sisley (hereinafter "DOC Defendants").

well as declaratory relief.

Before the court is a motion to dismiss the amended complaint, filed by the DOC Defendants and Trooper Townshend. (Doc. 40.) For the reasons that follow, the court will grant the motion based on Hookey's failure to exhaust her administrative remedies with respect to the DOC Defendants. As for Hookey's claims against Trooper Townshend, they will be dismissed for failure to state a claim upon which relief may be granted.

I. **Background**

Hookey began her incarceration at SCI-Muncy on January 23, 2008. (Doc. 25 ¶ 14.) At the time, she was pregnant. (*Id.*) According to Hookey, prior to giving birth, she arranged for the agency Lighthouse Prison Ministry to care for the child after its birth. (*Id.* ¶ 20.) Hookey and a caretaker from the agency named Susie Mack signed an agreement granting Ms. Mack legal and physical custody of the child until Hookey's release from prison. (*Id.* ¶ 21.)

After Hookey gave birth to a son while still incarcerated, an individual named Aaron Jones filed for custody of the child on April 8, 2008. (*Id.* ¶ 22.) Hookey maintains that Jones is not the biological father of her child. (*Id.* ¶ 23.) Hookey contends that DOC Defendants violated her right to access to the courts by denying

her access to the law library and legal materials for preparation of her custody case. (*Id.* ¶ 25.)

On July 28, 2008, Judge DiSalle entered an order awarding sole custody of the child to Aaron Jones and allowed law enforcement to enforce the order. (*Id.* ¶ 27.) Hookey contends that Judge DiSalle violated her constitutional rights to equal protection for failing to stay the custody case pending the resolution of a paternity test.[2] (*Id.* ¶ 26.)

On July 28, 2008, with the court order and the assistance of Trooper Townshend, Jones acquired physical custody of the child from Susie Mack. (*Id.* ¶ 28.) Hookey contends that Trooper Townshend violated her constitutional right to equal protection by ignoring her fears for her child's safety, as expressed to him by Susie Mack at the time, and allowing Jones to secure custody of the child without properly identifying himself to the state trooper. (*Id.* ¶ 30.) She also claims that when she requested assistance from Trooper Townshend in filing a "formal complaint" regarding the custody of her child, he ignored her, thereby violating her rights to equal protection and access to the courts. (*Id.* ¶ 32-33.) She asserts that since July 28, 2008, DOC Defendants have been ignoring her complaints regarding the abuse and

---

[2] Judge DiSalle is represented separately and filed a motion to dismiss the amended complaint, which the court granted on March 11, 2010. (*See* Doc. 71.)

3

neglect of her child, and are acting deliberately indifferent to the medical needs of herself and her child.³ (*Id.* ¶¶ 35-37.) Further, she claims that Defendants Sisley and Hummel have violated her right to equal protection by making false statements about her to "outside authorities," such as, "Do not investigate her allegations. She's a quack." (*Id.* ¶¶ 43-46.)

On November 18, 2008, Judge DiSalle issued an order scheduling a custody review hearing for January 6, 2009. (*Id.* ¶¶ 47-48.) In the order, Judge DiSalle directed SCI-Muncy officials to allow Hookey to participate by telephone. (*Id.* ¶ 48.) According to Hookey, SCI-Muncy officials refused to comply with Judge DiSalle's order. (*Id.* ¶ 49.) As a result, Hookey contends that DOC Defendants violated her rights to equal protection and access to the courts. (*Id.* ¶ 52.)

Hookey filed the amended complaint on April 29, 2009, seeking compensatory and punitive damages against all the Defendants. (*Id.* ¶¶ 64-65.) She also seeks a declaratory judgment that the Defendants' actions were illegal and unconstitutional.⁴ (*Id.* ¶ 66.) DOC Defendants and Trooper Townshend filed the instant motion to

---

³ Initially, Hookey set forth this claim against Trooper Townshend also, but withdrew it in her brief in opposition to the instant motion. (*See* Doc. 62 at 3.)

⁴ As the Third Circuit Court of Appeals has concluded, "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct . . . [n]or is declaratory judgment meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x, 80, 84 (3d Cir. 2006) (citations omitted). Because Hookey seeks declaratory relief here for these very reasons, she is not seeking declaratory relief "in the true legal sense," *id.*, and thus her relief requested will be limited to monetary damages.

4

dismiss Hookey's amended complaint on June 29, 2009. (Doc. 40.) This motion is now ripe for disposition.

**II.     Motion to Dismiss Standard**

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in Rule 8(a)(2) "depends on the type of case – some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted). "[A] situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Id.* A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. *Twombly*, 550 U.S. at 555; *accord*, *e.g.*, *Phillips*, 515 F.3d at 231-32; *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal

5

conclusion couched as a factual allegation.") (quotations and citations omitted));
*Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). *See also Ashcroft v. Iqbal*, –
U.S. –, 129 S. Ct. 1937, 1949 (2009) (recognizing that Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (quoting *Twombly*, 550 U.S. at 555).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Accord Phillips*, 515 F.3d at 233. If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 570; *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007). *See Iqbal*, 129 S. Ct. at 1949 (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the

7

complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III. <u>Discussion</u>

The DOC Defendants seek dismissal of Hookey's amended complaint on the grounds that she failed to properly exhaust her administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996). Further, DOC Defendants and Trooper Townshend claim that Hookey has failed to state a claim on which relief may be granted. The court will discuss these claims in turn.

### A. Exhaustion of Administrative Remedies

The PLRA requires a prisoner to present her claims through an administrative grievance process before seeking redress in federal court. The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Because an inmate's failure to exhaust under the PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in her complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Failure to exhaust administrative remedies must be pled and proved by the defendants.

*Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004) ("[P]rison grievance procedures supply the yardstick for measuring procedural default."). Additionally, "it is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp 2d 884, 894-95 (S.D.N.Y. 1998) (citing *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis*, 204 F.3d at 71.

Further, the United States Court of Appeals for the Third Circuit, in a non-precedential opinion, has stated that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi v. United States*, 165 Fed. Appx. 991, 993 (3d Cir. 2006). In citing to a case from the United States Court of Appeals for the Eighth Circuit, *Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003), the *Oriakhi* Court found that the lower court had properly dismissed plaintiff's complaint because his exhaustion attempt took place after he filed his *Bivens* claim. "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred." *Oriakhi*, 165 Fed. Appx. at 993 (quoting *Johnson*, 340 F.3d at 627-28).

The Pennsylvania DOC has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. 37 Pa. Code § 93.9(a); *see also* www.cor.state.pa.us, DOC Policies, Policy No. DC-ADM 804, Inmate Grievance System. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. An inmate may then appeal an adverse decision of the Grievance Coordinator to the Superintendent of the institution, and can finally appeal to the Secretary of the DOC Office of Inmate Grievances and Appeals, located in

11

Camp Hill, Pennsylvania. *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process).

In the instant case, DOC Defendants claim that Hookey's requests for administrative remedies show that she has not properly exhausted all available administrative remedies with respect to her claims, and therefore, the amended complaint should be dismissed. In support of this contention, DOC Defendants have submitted the declaration of Defendant Troy Edwards, SCI-Muncy's Assistant to the Superintendent, who researched the SCI-Muncy records for Hookey's exhaustion attempts. (Doc. 44-3, Ex. B, Edwards Decl.) In that declaration, dated July 13, 2009, Defendant Edwards asserts that Hookey has filed thirty-nine (39) grievances while incarcerated at SCI-Muncy, and none of these grievances has been submitted for final review by the DOC Office of Inmate Grievances and Appeals. (*Id*. ¶¶ 9-10.) Also, attached to Defendant Edwards' declaration is an Inmate Grievance Tracking Report dated from May 13, 2008 through July 6, 2009, confirming Hookey's failure to seek final review of any of her grievances. (Doc. 44-3 at 5.)

In response to DOC Defendants' exhaustion argument, Hookey claims that she did in fact file appeals to the DOC Office of Inmate Grievances and Appeals in Camp Hill. (Doc. 62 at 2.) In support, she attaches one copy of a cash slip for postage to Camp Hill dated March 7, 2009, and one copy of a cash slip for photocopies dated

March 2, 2009. (*Id*. at 17-18.) She does not attach copies of the appeals themselves. Hookey claims that when she did not receive a response from the Camp Hill office, she contacted the office again and subsequently received a response on April 7, 2009, stating that the office had no prior record of receipt of any appeal regarding her issues. (*Id*. at 2, 19.) She does not contend that she attempted to refile her appeals after receiving that response or was prevented from doing so. Since Hookey has not shown that she fully exhausted her administrative remedies for her issues raised in the amended complaint, and the record clearly reflects that she has failed to exhaust her administrative remedies with respect to her claims prior to filing this action, such a failure to exhaust is fatal to her claims.[5] Consequently, the court will grant DOC Defendants' motion to dismiss the amended complaint, without prejudice to any right Hookey may have to assert her claims against these Defendants in a newly filed complaint.

### B. Claims Against Trooper Townshend

Defendants also claim that Hookey has failed to state a claim upon which relief may be granted because the alleged conduct of all Defendants did not violate any of Hookey's constitutional rights. As the court will grant DOC Defendants' motion to

---

[5] Hookey also contends that she contacted Attorney General Tom Corbett and FBI Agent Patrick Howley regarding Commonwealth Defendants' "negligence." (Doc. 62 at 2.) To the extent that Hookey claims she wrote letters to Attorney General Corbett and Agent Howley, such is not proper exhaustion under SCI-Muncy's prison grievance procedure.

13

dismiss the amended complaint for failure to exhaust administrative remedies, a threshold issue, the court will limit its discussion here to whether Hookey has stated a claim against Trooper Townshend.

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." *Id.* (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)). Liability under § 1983 is personal in nature and a defendant is liable only if he was personally, affirmatively involved in the alleged wrongdoing. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), *abrogated in part on other grounds by Burlington N. & Santa Fe*

*Ry. Co. v. White*, 548 U.S. 53 (2006) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

In the instant case, Hookey contends that Trooper Townshend violated her constitutional right to equal protection on July 28, 2008, when he ignored Hookey's fears for her child's safety, as expressed to him by Susie Mack, and allowed Jones to secure custody of the child from Susie Mack using the court order issued by Judge DiSalle. She also contends he violated her constitutional rights to equal protection and access to the courts by ignoring her request for assistance in filing a complaint related to her custody case after Jones had obtained custody of the child. In order for Hookey's § 1983 claims to proceed against Trooper Townshend, she must first establish the existence of a constitutional violation. Accordingly, the court will first address this threshold inquiry.

### 1. **Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment requires that all persons "similarly situated" to be treated alike by state actors. *See City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Therefore, Hookey must show that she was similarly situated to, and treated differently from, other inmates, and that this discrimination was purposeful or intentional rather than incidental. *Washington v. Davis*, 426 U.S. 229, 239 (1976); *Tillman v. Lebanon County Corr.*

*Facility*, 221 F.3d 410, 424 (3d Cir. 2000).

In the instant case, the face of the amended complaint does not expressly set forth discrimination based on Hookey's membership in a particular class. In her brief in opposition to the instant motion, Hookey asserts that her equal protection claim is based on her status as an inmate who is also a mother. She alleges that Trooper Townshend enforced the court order which permitted Jones to secure custody of her child on July 28, 2008, thereby disregarding the child's safety, because of her status as an inmate. She also alleges that, because she is an inmate, Trooper Townshend ignored her requests for assistance in filing a complaint related to the custody case. However, Hookey has presented no evidence of how she has been treated differently from other inmates who are mothers in like circumstances. Based on the lack of evidence, Hookey has not shown that Trooper Townshend treated her differently from any other inmate who is a mother and who would have sought similar assistance from him and that any discrimination was intentional. Thus, this claim will be dismissed for failure to state a claim. Furthermore, given the facts that have already been pleaded by Hookey, it would be futile to allow her leave to amend this claim.

### 2. <u>Access to the Courts</u>

Prisoners have a fundamental right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Bieregu v. Reno*, 59

16

F.3d 1445, 1453 (3d Cir. 1995). However, to the extent that Hookey believes that Trooper Townshend restricted her access to the courts because he should have brought criminal charges against Jones for securing custody of her child at her request, she has not demonstrated "a deprivation of an actual constitutional right." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). While it is clear that prisoners are entitled to access to the judicial system, Hookey has not identified a duty on the part of Trooper Townshend to personally file a private criminal complaint for her simply upon her request. *See Bey v. Pennsylvania Dept. of Corr.*, 98 F. Supp. 2d 650, 664 (E.D. Pa. 2000) (denying prisoner's claim against a prison official on the basis that the official failed to file a criminal complaint on his behalf). In fact, under Rule 506 of the Pennsylvania Rules of Criminal Procedure, an individual is required to submit a private complaint to an attorney for the Commonwealth, here presumably the District Attorney's office for Washington County, Pennsylvania. Pa. R. Crim. P. 506. As a result, this claim will be dismissed for failure to state a claim. Further, as Trooper Townshend had no duty to file a criminal complaint at the request of Hookey, the filing of an amended claim would be futile, and leave to amend this claim will not be granted.

### IV. Conclusion

For the reasons set forth herein, the motion to dismiss will be granted as to

DOC Defendants for Hookey's failure to exhaust her administrative remedies. The motion to dismiss will be granted as to Trooper Townshend for failure to state a claim upon which relief can be granted.

An appropriate order will issue.

                                                           s/Sylvia H. Rambo
                                                      United States District Judge

Dated: March 15, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**MEGAN HOOKEY,** :
:
    **Plaintiff** : **CIVIL NO. 1:CV-08-02284**
:
**v.** : **(Judge Rambo)**
:
**MORROSA LOMAS,** *et al.*, :
:
    **Defendants** :

## **O R D E R**

In accordance with the attached memorandum of law, **IT IS HEREBY ORDERED THAT** the motion to dismiss (Doc. 40) is **GRANTED** and the following Defendants are **DISMISSED** from this action: David Deibler Gorman, Troy Edwards, Bill Frantz, Latisha Harvey, Rhonda Hummel, Marirosa Lamas, Brenda Rippey, George Sisley, and David Townshend.

                                        s/Sylvia H. Rambo
                                        United States District Judge

Dated: March 15, 2010.